1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARIA DEL PILAR REYES,

      Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

      Defendant.
_____/

No. C 08-04803 CW

ORDER DENYING
PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
OR REMAND AND
GRANTING DEFENDANT'S
CROSS-MOTION FOR
SUMMARY JUDGMENT

    Plaintiff Maria del Pilar Reyes has filed a motion for summary judgment or, in the alternative, remand to the Commissioner of the Social Security Administration (SSA) for further proceedings. Defendant Michael J. Astrue, in his capacity as Commissioner of the SSA, opposes the motion and cross-moves for summary judgment.[1] Having considered all of the papers filed by the parties, the Court DENIES Plaintiff's motion and GRANTS Defendant's cross-motion for summary judgment.

BACKGROUND

I.   Procedural History

    On September 6, 2006, Plaintiff filed an application for

_____

[1] Plaintiff has not submitted an opposition to Defendant's cross-motion or a reply to Defendant's opposition.

Disability Insurance Benefits under Title II of the Social Security Act. Administrative Record (AR) 110. Plaintiff alleged that she became disabled on December 15, 2005 due to carpal tunnel syndrome and pain in her neck and back. AR 63. On December 29, 2006, her claim was denied. AR 63-67. On February 26, 2007, Plaintiff filed a request for reconsideration, which was denied on April 25, 2007. AR 69-73. On January 31, 2008, a hearing was held before an Administrative Law Judge (ALJ), at which Plaintiff testified and was represented by counsel. AR 22-60. On April 14, 2008, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act because she could perform a significant number of jobs in the national economy. AR 7-21.

On June 19, 2008, Plaintiff filed a request for review with the Social Security Appeals Council, challenging the ALJ's decision. AR 5-6. On August 25, 2008, the Appeals Council affirmed the ALJ's decision. AR 1-4. On October 21, 2008, Plaintiff initiated the present action for judicial review under 42 U.S.C. § 405(g), seeking summary judgment or, in the alternative, remand to the Commissioner for further proceedings. Defendant opposes the motion and cross-moves for summary judgment.

II.  Factual History

     A.   Plaintiff's Personal History

     Plaintiff was born on October 21, 1969. She received a Bachelor of Arts Degree in 1996 and holds several financial services licenses to sell mutual funds and securities. AR 236. Plaintiff has past work experience as a corporate teller, financial representative, marketing lead, offshore sales specialist and marketing representative. AR 236-237. From 2001 through 2005,

2

Plaintiff worked as a sales assistant for Bank of America.  AR 236.
Plaintiff's sales assistant position is classified as a skilled
occupation performed at the light exertional level.  AR 255.

On December 6, 2006, Plaintiff filed for workers' compensation
benefits.  The claim resulted in a finding that she was precluded
or likely to be precluded from engaging in her former employment,
that she was entitled to a cash settlement, and that she was
entitled to continued medical treatment and vocational
rehabilitation services.  AR 263-270.

B.   Plaintiff's Medical History

In 2003, Plaintiff was diagnosed with carpal tunnel syndrome
and underwent a carpal tunnel release procedure and DeQuervain's
tendonitis release[2].  AR 292.  Her symptoms improved temporarily
and she was able to return to work.  Id.  In 2004, Plaintiff was
also diagnosed with cervical spine strain without radiculopathy[3]
and bilateral forearm tendonitis.  AR 292-293.

On March 3, 2004, Dr. David Curtis, a rheumatologist,
diagnosed Plaintiff with mild synovitis,[4] or inflammation of
certain membranes, with a negative rheumatoid factor.  AR 321.  He

[2] DeQuervain's tendonitis is a condition brought on by
inflammation of the tendons of the first dorsal compartment of the
wrist.  The Merck Manual of Diagnosis and Therapy 336 (Mark H.
Beers et al. eds., Merck Research Laboratories 18th ed. 2006)
(hereinafter The Merck Manual of Diagnosis and Therapy).  Surgical
release opens the first extensor compartment to make more room for
the inflamed tendons.  Id.

[3] Radiculopathy is the dysfunction of a nerve root often
caused by compression of the root.  The Merck Manual of Diagnosis
and Therapy at 1901.

[4]Synovitis is the inflammation of a membrane lining a joint.
Black's Medical Dictionary, 689 (Harvey Marcovitch ed., The
Scarecrow Press 41st ed. 2006).

3

noted that, with her mother's history of rheumatoid arthritis, Plaintiff's diagnosis appeared to be rheumatoid arthritis.  AR 321.

In July, 2005, Dr. Leonard Gordon, a hand specialist, examined Plaintiff and found that she could perform "lighter" work; that is, on a prophylactic basis, she could do computer work up to four hours per day with a half hour on and half hour off, and she could lift up to ten pounds on a moderately repetitive basis or fifteen pounds intermittently.  AR 244.

In January, 2006, Dr. Gary Salomon, Plaintiff's treating physician, assessed that she had no restrictions on sitting, standing or walking, that she could occasionally lift up to twenty pounds, and that she should not perform fine finger movements or push/pull bilaterally.  AR 433-435.  In March, 2006, Dr. Salomon opined that Plaintiff could return to work with limited keyboarding.  AR 387.

In May, 2006, Dr. Jules Steimnitz, a specialist in physical medicine, rehabilitation, and pain medicine, evaluated Plaintiff and found tenderness and reduced range of motion in the cervical spine, reduced grip strength in the right (dominant) hand, and positive Phalen's test[5], right greater than left.  AR 294-295.  Dr. Steimnitz diagnosed Plaintiff with repetitive strain injury of the neck and bilateral upper extremities with myofascial pain syndrome.[6]  AR 295.  Plaintiff reported improvement after attending

---

[5] Phalen's test is a maneuver used in the physical diagnosis of carpal tunnel symptoms.  The test is positive when wrist flexion produces tingling in the distribution of the median nerve.  The Merck Manual of Diagnosis and Therapy at 334, 339.

[6] Myofascial pain syndrome is a condition that affects the
(continued...)

4

biofeedback muscle re-education.  AR 362.

In June, 2006, Dr. Marvin Zwerin performed an Agreed Medical Examination on Plaintiff and reported that, due to problems in her upper back and neck, she was precluded from very heavy lifting and unremitting cervical mobility.  AR 349.  He also advised that Plaintiff should not be in a fixed position without being able to move, suggesting one to two minutes of movement every thirty to forty-five minutes.  Id.

In December, 2006, Dr. Stacie Daniels performed an orthopedic consultative examination on Plaintiff.  Dr. Daniels noted that Plaintiff had a limited range of motion in the cervical spine and a positive Phalen's test, but a negative Tinel's sign.[7]  AR 355-357.  Dr. Daniels' diagnostic impression was limited to bilateral carpal tunnel syndrome, and she assessed no physical limitations.  Id.

In August, 2007, Dr. Salomon addressed Plaintiff's complaints of parasthesias[8] in the right hand occurring occasionally once or twice a day.  AR 431-432.  Dr. Salomon indicated that his objective findings were minimal and that Plaintiff had full range of motion in her shoulders, elbows, wrists, digits and thumbs.  Id.  Dr.

---

[6](...continued)
"fascia surrounding and separating muscle tissue."  Stedman's Medical Dictionary at 1272.  The fascia is "a sheet of fibrous tissue that envelops the body beneath the skin" and "encloses muscles and groups of muscles, and separates their several layers or groups."  Id. at 700.

[7] Tinel's sign is a tingling sensation that a patient may feel at the site of a compressed or injured nerve.  The Merck Manual of Diagnosis and Therapy at 334, 339.

[8] Paresthesia is defined as a "spontaneous abnormal usually nonpainful sensation (e.g., burning, pricking)."  Thomas Lathrop Stedman, Stedman's Medical Dictionary 1425 (28th ed. 2006) (hereinafter Stedman's Medical Dictionary).

1   Salomon referred Plaintiff for a magnetic resonance imaging (MRI)

2   scan.  Id.  Based on the MRI scan, he recommended that Plaintiff

3   receive treatment for thoracic outlet syndrome.[9]  Plaintiff

4   participated in physical therapy throughout 2007.  AR 436-444.

5   In October, 2007, Dr. Richard Braun, a hand surgeon, examined

6   Plaintiff for an upper extremity evaluation.  Dr. Braun found no

7   strong clinical evidence of thoracic outlet syndrome, good motion

8   in her thumb and a normal range of motion bilaterally in her upper

9   extremities.  AR 449-461.  However, he noted that Plaintiff may

10  require further evaluation for her cervical degenerative disc

11  condition.  AR 460.  Dr. Braun concluded that Plaintiff should use

12  a computer for no more than one-half hour, should lift no more than

13  ten pounds, and should not keep her neck in a constant flexion

14  position or twist it from side to side.  AR 460-461.

15  In November, 2007, Dr. Tracy Newkirk performed a neurological

16  evaluation of Plaintiff.  Based on his examination of Plaintiff and

17  a review of her MRI scan and medical records, Dr. Newkirk diagnosed

18  costo-clavicular form of post-traumatic thoracic outlet syndrome;

19  neuropathic pain; focal, acquired limb dystonia[10] (greater on

20  right); repetitive strain or over-use syndrome; and cervical

21  strain.  AR 466, 472.  Dr. Newkirk advised that Plaintiff should

22  not type more than thirty minutes, should not carry over five

23  _____

24      [9] Thoracic outlet syndrome is the general term for a group of
    conditions caused by compression of nerves, blood vessels, or both,
25  at the base of the neck.  Stedman's Medical Dictionary at 1916.

26      [10] Limb dystonia is a syndrome of abnormal muscle contraction
    that produces repetitive twisting movements or abnormal positions
27  or postures of the affected limb.  Stedman's Medical Dictionary at
    602.

28

6

pounds singly or repetitively and should not perform repetitive reaching, fingering, manipulating or reaching with or without load at or above shoulder level.  AR 472.

III. Plaintiff's Vocational Rehabilitation Evidence

On February 20, 2006, Plaintiff underwent a functional capacity evaluation with vocational consultant, Timothy Farrell. Mr. Farrell indicated that Plaintiff's upper extremity and cervical spine conditions caused her to have residual limitations with regard to cervical range of motion, bilateral grip and pinch strength, manual and fine finger dexterity, repetitive forward and overhead reaching, and lifting/carrying.  AR 257.  He noted that Plaintiff would be limited to sedentary strength occupations due to her ten pound lifting and carrying limitation.  Id.  Mr. Farrell concluded that Plaintiff could not return to her usual and customary work due to pain limitations related to handling, fine manipulation and reaching, and could not work in any occupation that involved frequent and continuous use of her upper extremities. AR 258.  He did not identify any limitations in Plaintiff's ability to sit, stand or walk.

IV. RFC and Vocational Expert's Testimony

Mr. Alan Nelson, vocational expert (VE), appeared at the hearing at the request of the ALJ.  The ALJ provided the following hypothetical to the VE: a person such as Plaintiff, who had no limitations sitting, standing or walking; could lift and carry ten pounds on an occasional basis; was limited to occasional overhead reaching; could not perform power gripping or grasping bilaterally; could not perform repetitive rotation of the neck right to left; could not remain in a fixed position with constant flexion of the

neck; and could only spend thirty minutes per work day on a
computer. The ALJ asked the VE whether such a person could perform
Plaintiff's last relevant work. AR 54.

The VE testified that a hypothetical person with this RFC
could not perform Plaintiff's last relevant work because the
position required significant use of the computer. AR 55. The VE
testified that there were "unskilled jobs" that such an individual
could perform, including an unarmed security guard of which there
were 543,546 jobs existing nationally and 8,057 jobs regionally;
ticket taker/usher of which there were 36,399 jobs existing
nationally and 588 regionally; and information clerk with 102,104
jobs existing nationally and 1,467 jobs regionally. AR 56-58. The
ALJ asked the VE whether Plaintiff's ten pound lifting limitation
would affect the number of security guard and ticket taker
positions available, because as "light" work[11] jobs, they may
require occasional lifting up to twenty pounds. The VE responded
that the ten pound lifting limitation would erode approximately
twenty-five percent of all available security guard and ticket
taker jobs. AR 56-57. The VE noted that the positions were
categorized as "light" due to the standing demands, not the lifting
requirements. Id.

---

[11] "Light work involves lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing up to 10
pounds. Even though the weight lifted may be very little, a job is
in this category when it requires a good deal of walking or
standing, or when it involves sitting most of the time with some
pushing and pulling of arm or leg controls. To be considered
capable of performing a full or wide range of light work, you must
have the ability to do substantially all of these activities." 20
C.F.R. § 404.1567.

V. The ALJ's Disability Determination

In his April 14, 2008 decision, the ALJ employed the five-step sequential process to evaluate Plaintiff's claim of disability: (1) is the claimant engaged in substantial gainful work activity; (2) if not, does the claimant have a severe impairment, or combination of impairments; (3) if so, are the impairments listed in, or as severe as those listed in Appendix 1; (4) if not, do the impairments preclude the claimant from performing past relevant work; and (5) if so, is other work precluded? 20 C.F.R. § 404.1520(b)-(g). He found that Plaintiff was not disabled within the meaning of the Social Security Act. AR 10-21. At step one of the five-part analysis, the ALJ found that Plaintiff had not engaged in substantial gainful employment since December 15, 2005, the alleged disability onset date. AR 12.

At step two, the ALJ found that Plaintiff's cervical degenerative disc disease, thoracic outlet syndrome, history of carpal tunnel syndrome and repetitive stress injuries were severe within the meaning of the Regulations. Id.

At step three, the ALJ found that Plaintiff's impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1 of the Regulations. Id.

Prior to addressing steps four and five of the analysis, the ALJ weighed the medical and other evidence in the record to assess Plaintiff's Residual Functional Capacity (RFC).[12] AR 13-18. The

_____

[12] A claimant's RFC is the most he or she "can still do despite his [or her] limitations," or the claimant's maximum ability to perform sustained work in an ordinary work setting on a regular and continuing basis, eight hours a day for five days a week. 20 C.F.R. § 404.1545(a)(1). The ALJ must weigh all of the relevant
(continued...)

ALJ considered several sources to make his RFC determination, including: the medical information from Dr. Salomon, Plaintiff's treating physician; the reports of Drs. Gordon, Steimnitz, Zwerin, Daniels, Braun and Newkirk; and the report of vocational consultant Timothy Farrell.  Id.  The ALJ also considered Plaintiff's testimony, explaining that he gave little weight to her statements, because he found her testimony "not entirely credible" in light of the treatment record and her daily activities.  AR 16.  The ALJ determined that Plaintiff retained the RFC for light work, except she could not lift or carry more than ten pounds at any one time; could not perform repetitive rotation of her neck or keep her neck in a constant flexed or fixed position; could not perform keyboarding for more than thirty minutes in an eight hour workday; could not reach overhead or lift or carry overhead more than occasionally with her bilateral upper extremities; and could not perform power gripping or grasping bilaterally.  AR 18.

At step four of the disability analysis, the ALJ relied on the VE's testimony to conclude that Plaintiff was precluded from working in her past relevant occupation of sales associate.  AR 18.

At step five, the ALJ noted that the VE testified that Plaintiff's ten pound lifting limitation would eliminate only twenty-five percent of security guard and ticket taker jobs.  The ALJ utilized the Medical-Vocational guidelines, as well as the VE's testimony, to determine that there were a significant number of jobs that Plaintiff could perform.  AR 19.  Consequently, the ALJ

---

[12](...continued)
medical and other evidence to make the RFC determination.  20 C.F.R. § 404.1545(a)(3).

found that Plaintiff was not disabled within the meaning of the Social Security Act.  AR 19-20.

LEGAL STANDARD

A court cannot set aside a denial of benefits unless the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orteza v. Shalala, 50 F.3d 748, 749 (9th Cir. 1995).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

To determine whether an ALJ's decision is supported by substantial evidence, a court reviews the record as a whole, not just the evidence supporting the decision of the ALJ.  Walker v. Matthews, 546 F.2d 814, 818 (9th Cir. 1976).  A court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Rather, a court must weigh the evidence which supports the Commissioner's conclusions and that which does not. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

If there is substantial evidence to support the decision of the ALJ, it is well-settled that the decision must be affirmed even when there is evidence on the other side.  Hall v. Sec'y of Health, Educ., & Welfare, 602 F.2d 1372, 1374 (9th Cir. 1979).  The ALJ's decision should also be affirmed when the evidence is susceptible to more than one rational interpretation.  Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).  If supported by substantial

evidence, the findings of the Commissioner as to any fact shall be conclusive. 42 U.S.C. § 405(g); <u>Vidal v. Harris</u>, 637 F.2d 710, 712 (9th Cir. 1981).

Under the Social Security Act, disability is defined as an

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A). An individual will be determined to be disabled only if his or her physical or mental impairment is so severe that he or she "is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work." 42 U.S.C. § 423(d)(2)(A).

DISCUSSION

Plaintiff argues that: (1) the ALJ's assessment of her severe impairments did not reflect a complete evaluation of the medical evidence; (2) the ALJ failed to consider the combined effect of her impairments in determining she did not meet or equal a listed impairment; (3) the ALJ's RFC determination is not supported by substantial evidence; (4) the vocational expert's testimony was unresponsive to the ALJ's hypothetical question; and (5) the ALJ improperly found Plaintiff not credible.

I.    Step Two Determination

Plaintiff argues that at the second step of the five-step sequential inquiry, substantial evidence did not support the ALJ's failure to include Plaintiff's diagnoses for myofascial pain syndrome; neuropathic pain; rheumatoid arthritis; facet joint dysfunction; DeQuervain's tendonitis; and cervical spine strain in the list of her conditions that he found severe.

United States District Court

For the Northern District of California

At step two of the disability determination, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments that "significantly limits [his or her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include: "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b).

Here, the ALJ ruled in Plaintiff's favor at step two, finding four severe impairments: degenerative disc disease of the cervical spine, thoracic outlet syndrome, carpal tunnel syndrome and bilateral repetitive stress injury. AR 12.

The ALJ examined the evidence of Plaintiff's claims of neuropathic pain, rheumatoid arthritis, facet joint dysfunction, DeQuervain's tendonitis and cervical spine strain, but did not include them in his list of severe impairments. The ALJ noted that Dr. Steimnitz, a specialist in physical medicine and rehabilitation, diagnosed Plaintiff with myofascial pain syndrome in May, 2006. AR 292-298. The ALJ noted, however, that, in an examination one month later by Dr. Zwerin, an agreed medical examiner, Plaintiff reported no intolerance for sitting or walking and that, although she had some pain in her back, it was not regular or frequent. AR 344-345.

Plaintiff points to pages 315-341 of the record as evidence that her rheumatoid arthritis diagnosis was severe. However, nowhere in the record is there evidence of a severe rheumatoid arthritis condition; rather, Dr. Curtis, a rheumatologist, merely speculates that "with her mother's history . . . the diagnosis

13

appears to be rheumatoid arthritis." AR 321. Lastly, Plaintiff
points to medical records from 2004 and 2005 as evidence of her
DeQuervain's tendonitis diagnoses. However, in 2006, Dr. Daniels
performed an orthopedic consultative examination on Plaintiff and
found that she had no physical limitations and limited her
diagnostic impression to bilateral carpal tunnel syndrome. AR 354-
357.

Contrary to Plaintiff's assertion that the ALJ ignored the
evidence of some of her diagnosed conditions, a review of the ALJ's
findings makes clear that the ALJ properly considered the evidence
and determined that not all ten of the medical diagnoses were
severe impairments. The fact that a medically determinable
condition exists does not necessarily mean the symptoms are severe
or disabling, as defined by the Social Security Regulations. The
ALJ did not err in the step two determination.

II.  Step Three Determination

Plaintiff argues that the ALJ erred in his step three
determination by concluding that her impairments were not medically
equivalent to those listed in Appendix 1.

At step three of the evaluation process, the ALJ must
determine whether a claimant has an impairment or combination of
impairments that meets or equals a condition outlined in the
Listing of Impairments. 20 C.F.R. § 404.1520(d). "An ALJ must
evaluate the relevant evidence before concluding that a claimant's
impairments do not meet or equal a listed impairment. A
boilerplate finding is insufficient to support a conclusion that a
claimant's impairment does not do so." Lewis v. Apfel, 236 F.3d
503, 512 (9th Cir. 2001). In order for a claimant's impairment or

14

combination of impairments to meet the requirement of a listing, all of the criteria of that listing and the duration requirement must be satisfied.  20 C.F.R. § 404.1525(c)(1)-(3).  A claimant bears the burden of proving that he or she has an impairment that meets or equals the criteria of a listed impairment.  Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.")

Plaintiff fails to meet her burden of proving that her combination of impairments meets or equals a listed impairment. Plaintiff does not specify which listing she believes she meets or equals and fails to set forth any evidence which would support the diagnosis and finding of a listed impairment.  The ALJ properly considered the combined effect of all Plaintiff's impairments and determined that it failed to meet or equal in severity the criteria of either section 1.02 or 1.04, listed impairments related to the musculoskeletal system.

Further, the ALJ was not required, as urged by Plaintiff, to obtain an updated expert medical opinion pursuant to Social Security Ruling 96-6p.  That Ruling provides that the ALJ must obtain an updated medical report "when additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the state agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."  SSR 96-6p.  Here, the ALJ's determination that the

15

record did not contain evidence that would change the state
agency's opinion regarding Plaintiff's medical equivalence was not
unreasonable.  The issue of medical equivalence is one reserved to
the Commissioner and the ALJ properly considered all of Plaintiff's
medical evidence.

Thus, the ALJ did not violate Social Security Ruling 96-6p,
nor did he err in finding at step three that Plaintiff's
impairments were not medically equivalent to any section of the
Listing of Impairments.

III. Residual Functional Capacity Determination

Plaintiff argues that the ALJ failed to consider the effects
of all her impairments when assessing her RFC as required by Social
Security Ruling 96-8p.

Social Security Ruling 96-8p provides:

> In assessing RFC, the adjudicator must consider only
> limitations and restrictions imposed by all of an
> individual's impairments, even those that are not
> "severe."  While a "not severe" impairment(s) standing
> alone may not significantly limit an individual's ability
> to do basic work activities, it may -- when considered
> with limitations or restrictions due to other impairments
> -- be critical to the outcome of a claim.

As noted above, the ALJ determined that Plaintiff retained the
RFC for light work, except she could not lift or carry more than
ten pounds at any one time; could not perform repetitive rotation
of her neck or keep her neck in a constant flexed or fixed
position; could not perform keyboarding for more than thirty
minutes in an eight hour workday; could not reach overhead or lift
or carry overhead more than occasionally with her bilateral upper
extremities; and could not perform power gripping or grasping
bilaterally.  AR 18.

16

The ALJ based his assessment of Plaintiff's RFC on substantial evidence in the record. In January, 2006, Dr. Salomon, Plaintiff's treating physician, found that, although she should not perform fine finger movements or push/pull bilaterally, she could return to work with limited keyboarding. AR 399. In June, 2006, Dr. Zwerin, an agreed medical examiner, noted that Plaintiff was precluded only from very heavy lifting, unremitting cervical immobility and/or maintaining her neck/upper back in a fixed position. AR 349. In August, 2007, Dr. Salomon indicated that, although Plaintiff complained of pain in her right hand, she actually had a full range of motion in her shoulders, elbows, wrists, digits and thumbs. AR 431. In October and November of 2007, respectively, Drs. Braun and Newkirk opined that Plaintiff should limit her computer work to no more than thirty minutes per workday, should lift no more than five to ten pounds and should restrict using her upper extremities for activities at or above shoulder level. AR 460-61, 472.

The ALJ considered all of the doctors' prescribed limitations for Plaintiff in his RFC determination. Furthermore, although the doctors recommended limitations on Plaintiff's activities, no doctor indicated that Plaintiff was unable to work. Plaintiff has not set forth, and there is no evidence in the record of, any functional limitations that the ALJ failed to consider.

IV. Vocational Expert's Testimony

Plaintiff asserts that the ALJ's step five determination was flawed because the VE's answers were unresponsive to the ALJ's hypothetical questions, and the VE's resulting testimony did not accurately describe the occupations listed in the Dictionary of Occupational Titles (DOT), in contravention of Social Security

17

Ruling 00-4p.

Plaintiff contends that the VE's answer to the ALJ's hypothetical question was unresponsive because the VE identified jobs that required manipulative and reaching requirements identical to those of her past relevant work. Citing this alleged inconsistency, Plaintiff concludes that the VE's testimony that Plaintiff could perform work as a security guard, ticket taker or information clerk was unreliable. However, the VE did not testify that Plaintiff was precluded from her past work on the basis of manipulative and reaching limitations, but because those jobs required significant use of the computer. AR 55. The ALJ did not include any limitation regarding manipulative functions in the hypothetical question.

Plaintiff also argues that the VE contradicted the DOT by disregarding the ten pound lifting limitation because the security guard and ticket taker positions are categorized as light category jobs, which require occasional lifting of up to twenty pounds and frequent lifting of up to ten pounds. DOT (372.667-034 Security Guard, 344.667-010 Ticket Taker). However, as Defendant points out, the DOT identifies the security guard and ticket taker positions as light due to the standing demands, and Plaintiff had no standing restrictions.

Pursuant to Social Security Ruling 00-04p, an ALJ is required to ask a VE about any conflicts between his expert testimony and the information provided in the DOT. The ALJ complied with this rule both at the outset of the hearing and during the VE's testimony. See AR 50 ("If at any time your opinions differ in any regard from the DOT, please tell me"); AR 56. In view of the fact

that the jobs the VE identified were classified as "light" and that Plaintiff could only lift up to ten pounds, the ALJ asked the VE whether the ten pound lifting limitation would affect the number of those positions available. The VE testified that Plaintiff's ten pound lifting limitation would erode the occupational base by twenty-five percent, which would mean that there were 6,042 security guard jobs and 441 ticket taker jobs available in the regional area. Thus, the ALJ did not err in relying on the VE's testimony because the ALJ properly elicited the VE's explanation of any conflict between his testimony and the DOT, as required by Social Security Ruling 00-04p.

V. Plaintiff's Credibility

Plaintiff contends that the ALJ erred by concluding that she was not credible.

Under the Cotton test, where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).

To determine whether a claimant's testimony regarding the severity of his or her symptoms is credible, the ALJ may properly consider: (1) ordinary techniques of credibility evaluation, such as the plaintiff's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the

plaintiff that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the plaintiff's daily activities. <u>Smolen</u>, 80 F.3d at 1273.

Assuming that Plaintiff meets the <u>Cotton</u> threshold test, the ALJ has provided clear and convincing reasons for questioning Plaintiff's credibility. First, the ALJ cited Plaintiff's testimony that she engaged in a wide range of daily activities that included caring for herself and her infant daughter, grocery shopping, cleaning the house with help from her husband, walking and driving for up to two hours. AR 16. Plaintiff was also able to carry her baby "all day." AR 189. Moreover, not only did Plaintiff provide her mother with in-home care during the time she was allegedly disabled, the ALJ noted that Plaintiff testified that she stopped this work because her baby required more care and attention, not because of any pain or limitation. AR 16, 53-54.

Plaintiff cites <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001), for the proposition that a person need not be "utterly incapacitated" to be found disabled. But, where a plaintiff claiming disability is able to spend a substantial part of his or her day performing physical functions that are transferable to a work setting, an ALJ may properly discredit his or her allegations of complete inability to work. <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999). Thus, the ALJ's determination that Plaintiff's activities of daily living were consistent with an ability to perform light work was both reasonable and consistent with the record.

Plaintiff also challenges the ALJ's credibility finding by

citing Social Security Ruling 96-7p. Plaintiff argues that her history of efforts to obtain medical treatment, seeking diagnoses and treatment from more than a dozen doctors and treating sources, serves to enhance her credibility.

Despite Plaintiff's history of seeking medical treatment, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ noted that, although Plaintiff claimed to suffer from complete impairment, she received little or no medical care to treat her alleged symptoms, other than some periodic physical therapy. AR 16. Further, she took no prescription medication other than over-the-counter medications such as Tylenol and Ibuprofen for her allegedly disabling pain. Id.; see Parra, 481 F.3d at 751 (rejecting a claimant's subjective complaints of pain because his "physical ailments were treated with an over-the-counter pain medication"). Thus, the ALJ correctly considered the factors set out in Social Security Ruling 96-7p.

Plaintiff also cites Social Security Ruling 06-03p to argue that the ALJ failed to consider that the Workers Compensation Board found that she was unable to return to her former employment. Under Social Security Ruling 06-03p, "evidence of a disability decision by another governmental or non-governmental agency cannot be ignored and must be considered." Although the ALJ made no specific mention of the Workers Compensation Board's decision, the Court finds no error in this omission because he ultimately reached the same conclusion as the Workers Compensation Board. Both found that Plaintiff was unable to return to her former employment.

21

1    Thus, the Court finds that the ALJ provided clear and

2  convincing reasons for rejecting Plaintiff's subjective complaint

3  of a "complete inability to work."

4                              CONCLUSION

5    Because the ALJ properly applied the five-step analysis to

6  conclude that Plaintiff was not disabled, and for the more specific

7  reasons outlined above, Defendant did not commit reversible error.

8  The Court finds that the ALJ's decision that Plaintiff is not

9  disabled within the meaning of the Social Security Act was

10  supported by substantial evidence in the record and was based upon

11  proper legal standards.  Accordingly, Plaintiff's motion for

12  summary judgment or remand is DENIED and Defendant's motion for

13  summary judgment is GRANTED.  The Clerk shall enter judgment

14  accordingly and close the file.  Each party shall bear his or her

15  own costs.

16    IT IS SO ORDERED.

17  Dated: February 8, 2010                _____

18                                         CLAUDIA WILKEN
                                           United States District Judge

19

20

21

22

23

24

25

26

27

28